Leslie **CANTY, Jr.,** Plaintiff,

v.

The **BOARD OF EDUCATION, CITY OF NEW YORK,** Defendant.

**No. 70 Civ. 303.**

United States District Court,
S. D. New York.

May 4, 1970.

---

Leslie Canty, Jr., pro se.

J. Lee Rankin, Corp. Counsel, New York City, for defendant; Charles D. Maurer, Asst. Corp. Counsel, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiff moves for a preliminary injunction under Rule 65, Fed.R.Civ.P., which would direct defendant, the Board of Education of the City of New York, to reinstate him as a teacher in Junior High School 136 and to pay him the entire amount of his salary that has not been paid since his dismissal on October 10, 1969.

■ This action is erroneously brought under the Civil Rights Act of 1968, Title I, Section 2B, a statute concerned with fair housing, riots and civil obedience. In substance, however, the complaint charges a denial of the constitutional right to due process and presumably seeks money damages and a permanent injunction directing defendant to reinstate plaintiff. The action is, therefore, cognizable under 42 U.S.C. § 1983 and jurisdiction is based on 28 U.S.C. § 1343.

■ Plaintiff's present motion for the extraordinary remedy of a preliminary injunction is directed to the sound discretion of the court. The court's exercise of discretion usually turns on four factors: (1) the probability of success on the merits; (2) the immediate and irreparable harm to plaintiff if the preliminary injunction is denied; (3) the injury to defendant if the preliminary injunction is granted; and, if applicable, (4) the affect the decision will have on the public.[1]

■ The party seeking the motion for a preliminary injunction has the burden of establishing a likelihood of success on the merits, that is, of raising "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."[2] The latter three criteria are satisfied if the moving party can demonstrate that the harm inflicted by denying the injunction is immediate and irreparable and outweighs the harm that will be caused by denying the injunction. We turn, now, to consider if plaintiff has made a sufficient showing of a likelihood of ultimate success.

Plaintiff's claim in this action is rather narrow. He does not allege that the dismissal procedures or any applicable state statutes or local ordinances per se violate due process. Nor does he allege an irrational classification under the equal protection clause. Rather he limits his claim to the allegation that his dismissal was arbitrary and capricious

---

1. See Unicon Management Corp. v. Koppers Company, 366 F.2d 199, 204–205 (2d Cir. 1966); Hosey v. Club Van Cortlandt, 299 F.Supp. 501, 503 (S.D.N.Y. 1969).

2. Unicon Management Corp. v. Koppers Company, supra; Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).

and hence violated his right to due process.

The terms "arbitrary" and "capricious" embrace a concept which emerges from the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution and operates to guarantee that the acts of government will be grounded on established legal principles and have a rational factual basis. A decision is arbitrary or capricious when it is not supported by evidence or when there is no reasonable justification for the decision.[3]

Thus, in order for plaintiff to establish a likelihood of success on the merits, he must be able to demonstrate to the extent, at least, of a reasonable probability that the decision to dismiss him was without evidentiary support.

The affidavits and exhibits presented by defendant, however, indicate that there was substantial, if not overwhelming, evidentiary support for the Board's dismissal.

Plaintiff was a substitute teacher from early September 1969 to October 10, 1969 at Junior High School 136 in Manhattan. He was dismissed on October 10, 1969, and the school principal, in a letter sent to plaintiff dated October 14, 1969, explained the reasons for the dismissal. According to the principal, there were complaints from parents protesting plaintiff's holding children in class after hours and claiming that he physically abused one particular young girl. The principal, himself, on complaints from certain of plaintiff's pupils, attempted to observe plaintiff's classroom conduct on September 17, 1969. Plaintiff was not, however, in the class and was instead found sleeping in the teachers' room.

Plaintiff was also absent on October 6 and 7, 1969 without giving any prior notice or subsequent explanation.

The crucial event occurred on October 10, 1969 when some of plaintiff's pupils brought to the principal's office a young girl in tears, the same one who previously complained of being physically abused by plaintiff. The young girl now claimed that plaintiff pushed her and consequently injured her. The other youngsters corroborated her claim.

The principal then went to plaintiff's classroom, which he found to be in total disorder, and relieved plaintiff of his duties.

Plaintiff, after being informed of the specific reasons for his dismissal, initiated grievance proceedings pursuant to the applicable collective bargaining agreement. At the hearing, held on November 7, 1969, plaintiff claimed that he should not have been immediately dismissed because the situation was not an emergency.

The principal, in response to a question by a teacher representing plaintiff at the hearing, stated that he considered the situation an emergency because of the complaints of physical abuse and the disorder he personally observed in plaintiff's classroom. The young girl who charged plaintiff with physical abuse testified and the statements of the two pupils who accompanied her to the principal's office were read.

The principal, on November 10, 1969, mailed plaintiff a memorandum in which he summarized the evidence presented at the hearing and decided that the claim of "no emergency" was unjustified. The principal also notified plaintiff that he now had a right to appeal to the local Deputy Superintendent.

Plaintiff, then, took such an appeal and another hearing was held on November 18, 1969, before Edwin J. Haas, the Acting District Superintendent. Mr. Haas, in a letter dated November 21, 1969, informed plaintiff that he upheld the dismissal particularly because of the

---

3. O'Boyle v. Coe, 155 F.Supp. 581, 584 (D.C.Dist.1957); East Tex. Motor Freight Lines v. United States, 96 F. Supp. 424, 427 (N.D.Tex.1951); Ford Motor Co. (Delaware) v. United States, 97 Ct.Cl. 370, 47 F.Supp. 259 (1942).

evidence as to plaintiff's "difficulty in maintaining class control." He did not, however, completely agree that an emergency existed and therefore awarded plaintiff ten days' additional salary.

The record is unclear as to whether or not plaintiff presently has a right to appeal to the Superintendent of Schools, but for the purpose of this motion, we will assume that he does not and that he has, therefore, exhausted all available administrative remedies.

Considering the foregoing reasons defendant presents and particularizes for dismissing plaintiff, it is highly unlikely that plaintiff can prove that his dismissal was so irrational and so lacking in evidentiary support as to be arbitrary and capricious. Plaintiff's rambling and at times rather unintelligible statement, and a fellow teacher's equally confusing letter submitted in support of the motion do not offer a sufficient basis for finding that it is reasonably probable that plaintiff can establish that his dismissal violated constitutionally guaranteed due process.

Since plaintiff has failed to meet his burden of establishing a likelihood of success on the merits,[4] his motion for a preliminary injunction is properly denied without having to balance the harm inflicted on plaintiff by denying the injunction against the harm inflicted on defendant and on the public by granting the motion.

■ Were we to weigh the potential harm to both sides, however, it is far from clear that the scale would tip in plaintiff's favor. Plaintiff claims a denial of federal constitutional rights and this has often been held to establish automatically immediate and irreparable harm.[5] This is offset, however, by the potential harm to defendant and to plaintiff's pupils if we were to reinstate plaintiff pending the outcome of this action. The equitable balance leans even further in defendant's favor when we consider that plaintiff is seeking mandatory relief on this motion, almost identical with the ultimate relief he would obtain if he were to prove his case on the merits, namely, reinstatement and back pay. Finally, plaintiff, if he does eventually succeed in establishing his claim will be reinstated and obtain money damages reflecting his entire loss of earnings, and thus is not irreparably injured, at least in a professional and financial sense, by denial of this motion.

The foregoing constitutes the court's findings of fact and conclusions of law, as required by Rule 52(a), Fed.R.Civ.P.

Accordingly, plaintiff's motion for a preliminary injunction is denied.

So ordered.

---

4. Brass v. Hoberman, 295 F.Supp. 358 (S.D.N.Y.1968).

5. Henry v. Greenville Airport Comm'n, 284 F.2d 631 (4th Cir. 1960) ; Brass v. Hoberman, *supra*, 295 F.Supp. at 361.