**SOBEL PAPER AND WIRE CO., Inc.**

v.

**The GREAT ATLANTIC AND PACIFIC TEA CO., Inc.**

and

**James Vigianno & Sons, a/k/a Vigianno Brothers.**

**Civ. A. No. 72–494.**

United States District Court,
E. D. Pennsylvania.

April 10, 1972.

Patrick W. Kittredge, of Cohen, Shapiro, Polisher, Sheikman & Cohen, Philadelphia, Pa., for plaintiff.

Morgan, Lewis & Bockius, Denis V. Brennan of Philadelphia, Pa., for Great Atlantic & Pacific Tea Co.

Don F. D'Aqui of D'Aqui & Del Collo, Philadelphia, Pa., for Vigianno.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

This is a motion for a preliminary injunction predicated on § 210 of the Economic Stabilization Act (the "Act"), as amended by Public Law 92–210, approved December 22, 1971[1], in which

---

1. Section 210 reads as follows:

"(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

"(b) In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:

"(1) an amount not more than three times the amount of the overcharge upon which the action is based, or

"(2) not less than $100 or more than $1,000; except that in any case where the defendant establishes that the overcharge was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to the avoidance of such error the liability of the defendant shall be limited to the amount of the overcharge: *Provided,* That where the overcharge is not willful within the meaning of section 208(a) of this title, no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller or renter a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim.

"(c) For the purposes of this section the term 'overcharge' means the amount

plaintiff seeks to prohibit defendants from carrying out the terms of a contract entered into by them, allegedly in violation of the Act. Both defendants have moved to dismiss the complaint. On the basis of testimony adduced at a hearing, oral argument, and memoranda of law, we deny the motions of plaintiff and of defendant The Great Atlantic and Pacific Tea Co., Inc. ("A&P"), but grant the motion of defendant Vigianno Brothers ("Vigianno"), for the reasons set forth below.

The pertinent facts are these. Plaintiff, Vigianno, and two other enterprises not party to this suit, are engaged in the business of buying and selling waste paper products and were asked by defendant A&P to submit bids for a one year contract (beginning in March, 1972) for the purchase of A&P's corrugated waste in baled form at A&P's Yeadon, Pennsylvania, warehouse where the cardboard waste from all of A&P's stores in the Philadelphia area is collected and baled. Plaintiff had had with A&P the corrugated waste contract for the two years immediately prior to March, 1972,[2] and quoted to A&P a price which plaintiff said was the maximum which A&P was permitted to charge under the Act's price freeze regulations. That price, according to plaintiff's calculations, was $18.16 per ton. Vigianno bid $22.00 per ton and was awarded the contract.

Plaintiff contends that A&P's request for bids, when interpreted in light of the surrounding circumstances, really constituted an offer to contract with the highest legal bidder and that plaintiff successfully accepted the offer, and bound A&P, because the two bids in excess of $18.16 per ton were above the permitted frozen base price. Accordingly, plaintiff argues that, but for A&P's violation of the Act, plaintiff would have been the contracting party with A&P.

Defendants contend that plaintiff has no standing under the Act and that the waste products in question are exempt from price regulations. Alternatively, defendants argue that A&P's request for bids was a solicitation for offers rather than an offer and that, in any event, plaintiff's bid was not the highest legal bid. We need not decide any of the foregoing issues in order to dispose of plaintiff's motion,[3] for even if we were to resolve them in favor of plaintiff, plaintiff would not be entitled to the equitable relief he seeks.

■ In Midland-Ross Corp. v. Sunbeam Equipment Corp., 316 F.Supp. 171 (W.D.Pa.1970), aff'd, 435 F.2d 159 (3 Cir.), the Court discussed the requirements which must be satisfied before a preliminary injunction can be granted:

Plaintiff must show, not alternatively but conjunctively, three things: first, that plaintiff will suffer immediate irreparable injury if the preliminary injunction is not granted; second, that balancing the conveniences and possible injuries to both parties, the scales of equity weigh in favor of plaintiff; and third, that plaintiff is reasonably likely to succeed in establishing its case on the merits in a full hearing for final injunctive relief. [Citations omitted.] 316 F.Supp. at 173.

■ Accordingly, we may deny plaintiff's motion on our finding alone that plaintiff will suffer no irreparable injury, much less *immediate* irreparable injury.

Plaintiff maintains that it is suffering irreparable harm because approximately one-third of its gross sales of waste materials is attributable to corrugated waste purchased from A&P and

---

by which the consideration for the rental of property or the sale of goods or services exceeds the applicable ceiling under regulations or orders issued under this title."

2. Plaintiff also alleges that it has had the corrugated waste contract with A&P exclusively for the past fifty years.

3. In denying A&P's motion to dismiss, however, we do decide that plaintiff does have standing under § 210. *Infra*, p. 389.

that the loss of the A&P contract will consequently so damage plaintiff as to drive it out of business.

Assuming that plaintiff has been legally harmed by A&P's breach of contract arising from a violation of the Act, plaintiff's injury is ultimately reducible to a loss in profits, an injury very much remediable at law. For plaintiff to argue that it has a right to injunctive relief because it will be irreversibly crippled by the loss of A&P's business is to argue that plaintiff somehow had a vested right to the A&P contract and that the loss of the contract constitutes an illegal expropriation of plaintiff's basic earning power. Such an argument simply ignores the facts that A&P let the contract on a year-to-year basis and that as long as plaintiff had the contract with A&P, plaintiff was always subject to the loss of A&P's business if A&P decided not to renew the contract with plaintiff. (Indeed, since the contracts have apparently always contained a ninety-day notice termination clause, plaintiff's right to A&P's business at any one time was always somewhat precarious.) Plaintiff could, thus, claim loss of profits for one year, at most, (excluding reduction by way of plaintiff's duty to mitigate damages) and computation of such profits would be uncomplicated and unspeculative since pricing and tonnage records appear to be kept as a matter of course.

Finally, there has been no showing that A&P's contract provided a unique source of corrugated waste. On the contrary, the testimony of Mr. Louis Golden, president of a nationwide waste paper buyer and seller, made clear that there were at least five or six other producers of corrugated waste on the scale of A&P in the Philadelphia area, and numerous other producers whose aggregate production would equal that of A&P's, with whom plaintiff could bid upon termination of any existing contracts. Plaintiff's corrugated waste business, then, could be reconstituted by merely bidding on other corrugated waste contracts in the area as they came up for bid.

Although plaintiff has failed to make out a case for injunctive relief, it has made legal allegations which are sufficient to withstand A&P's motion to dismiss. A&P contends that § 210 gives standing to bring suit only to one who has been overcharged and that since plaintiff has paid nothing to A&P, much less been overcharged, it has suffered no legal harm within the meaning of the Act. A&P's reading of § 210 is erroneous: the language and structure of the statute reveal a clear distinction between an "overcharge" and a "legal wrong," indicating that "legal wrong" is a more encompassing concept than "overcharge." First, it would be unduly anomalous for the drafters of the statute to say "legal wrong" in subsection "(a)" when they meant "overcharge" since they were able to use "overcharge" in subsection "(b)" in a very specific context and defined "overcharge" in subsection "(c)." Indeed, subsection "(b)" merely discusses one specific example of a "legal wrong" which can be expected to occur under the Act and delineates the specific remedies for that particular "wrong." Second, if "legal wrong" meant nothing more than "overcharge," the references in subsection "(a)" to declaratory judgment and writ of injunction would be meaningless since such forms of relief are basically inappropriate for overcharge, as made clear by subsection "(b)"'s provision for treble damages. Finally, we are convinced that since the purpose of the Act is to regulate prices, § 210 will best serve that purpose if it is construed to permit the bringing of suits by persons who are "legally wronged" by a violation of the Act, other than by way of being overcharged. This reading of the statute would increase the possibilities of enforcing price stabilization by deterring would-be price raisers through threat of private suit. Indeed, the case before us illustrates how ineffective § 210 might be if standing were limited only to overcharged buyers, since a buyer, such as Vigianno, might be willing to pay more in order to secure a profitable contract. Yet, under A&P's interpretation of §

210, the price freeze would be circumvented, and no private person, although aggrieved, would have standing to complain. In light of the foregoing analysis of the statute and its policy, we rule that plaintiff has standing to bring this suit, and we deny A&P's motion to dismiss.

We do grant, however, Vigianno's motion to dismiss because of plaintiff's failure to state a cause of action against Vigianno. Although plaintiff has denominated Vigianno a party-defendant, plaintiff has not averred in its complaint that Vigianno committed any wrongful conduct or that Vigianno in any way caused plaintiff's alleged injury. Plaintiff's statement that the contract between Vigianno and A&P is in violation of the Act cannot be read as an allegation of wrongful conduct on the part of Vigianno. Moreover, in its prayer for relief, plaintiff seeks neither an injunction against, nor monetary damages from, Vigianno. We will permit, however, plaintiff to amend its complaint against Vigianno.