**Susan A. BRAVO, suing on behalf of herself individually and all others similarly situated, Plaintiff,**

**v.**

**BOARD OF EDUCATION OF the CITY OF CHICAGO, Defendants.**

**No. 72 C 970.**

United States District Court, N. D. Illinois, E. D.

July 7, 1972.

Susan O. Getzendanner, Sheribel F. Rothenberg, Chicago, Ill., for plaintiff.

James W. Coffey, Robert J. Krajcir, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

Plaintiff Bravo filed this action on April 18, 1972 on behalf of herself and all other teachers similarly situated. The complaint charges the Board of Education of the City of Chicago (hereinafter "the Board") and other named defendants with discrimination against pregnant school teachers in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Equal Protection clause of the Fourteenth Amendment to the United States Constitution; Article I, § 18 of the Illinois Constitution; S.H.A.; and § 853(a) of the Illinois Fair Employment Practices Act, Ill.Rev.Stat. ch. 48, § 853 (a). This Court has jurisdiction under 28 U.S.C. § 1343(3), (4).

On April 27, 1972 an evidentiary hearing was had on plaintiff's motion for a preliminary injunction. Because all of plaintiff's legal arguments in support of her motion have been directed to the equal protection claim, this analysis of the merits of her motion will be restricted to that issue. The following constitutes this Court's findings of fact and conclusions of law for the purpose of the motion for a preliminary injunction.

Plaintiff has been a certified teacher for the Board since 1964. Until March 30, 1972, she taught English at Chicago Vocational High School (hereinafter "Vocational"). At the time of the hearing, plaintiff was pregnant and was expected to deliver on or about June 22, 1972. After consulting with her personal physician, she decided to apply for maternity leave from her position at Vocational effective May 12, 1972. At the direction of her principal, plaintiff instead applied to the Board for maternity leave beginning April 12. In a letter dated March 28 the Board advised Mrs. Bravo that she had violated § 4–37 of its rules and that her last working day would be March 30. She was later informed that she could not return to teaching until September 30, 1972.

Plaintiff alleges that she and others similarly situated are denied equal protection under several provisions of the Board's maternity leave policy. To be entitled to a preliminary injunction against § 4–37 or specific parts of it, plaintiff has the burden of showing: (1) that there is a reasonable likelihood of success on the merits; (2) that she and her class will suffer irreparable injury if it is not granted; and (3) that the balance of hardships and conveniences to each side weighs in their favor. Midland-Ross Corp. v. Sunbeam Equip. Corp., 316 F.Supp. 171, 173 (W.D.Pa.), aff'd, 435 F.2d 159 (3d Cir. 1970).

Several recent cases have dealt with the validity of mandatory maternity leave rules. In Cohen v. Chesterfield County School Bd., 326 F.Supp. 1159 (E.D.Va.1971), it was held that such a rule violated the Equal Protection clause because the Board there had shown no "rational basis" for treating pregnancy any differently than any other medical condition. Id. at 1160–61. In LaFleur v. Cleveland Bd. of Educ., 326 F.Supp. 1208 (N.D.Ohio 1971), the court upheld a similar rule, terming it "entirely reasonable." Id. at 1214.

In Schattman v. Texas Employment Comm., 459 F.2d 32 (5th Cir., Mar. 1, 1972), the court, after reversing the district court's finding of jurisdiction, went on in dictum to discuss the merits of an equal protection challenge to a mandatory maternity leave policy. Apparently on the basis of the administrative difficulties involved in making individual assessments of the abilities of each pregnant worker and some medical testimony to the effect that women in their later months of pregnancy would be less effective in their jobs, the Fifth Circuit decided that the equal protection claim was without merit.

In Williams v. San Francisco Unified School Dist., 340 F.Supp. 438 (N.D.Cal., 1972), a preliminary injunction was granted against the enforcement of a mandatory leave policy for pregnant teachers. Even though the leave period

was two months shorter than that complained of here, the court distinguished *LaFleur* and *Schattman* and relied on *Cohen.*

Before the evidence now in the record can be considered, the proper standard for testing the Board's maternity leave policy must be determined. Under the traditional or restrained review test, a person assailing a legislative or administrative classification on equal protection grounds has the burden of showing that it has no rational and substantial relationship to a valid objective of the rulemaking body. Reed v. Reed, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Morey v. Doud, 354 U.S. 457, 464, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1947). But if the classification is based upon a "suspect" criterion or affects a "fundamental" right, the burden shifts to the rule-maker to show that it is the least drastic method of promoting a "compelling" interest. Shapiro v. Thompson, 394 U.S. 618, 637–38, 89 S. Ct. 1322, 22 L.Ed.2d 600 (1969); Comment, *Are Sex-Based Classifications Constitutionally Suspect?* 66 Nw.U.L. Rev. 481, 493 (1971).

*LaFleur, supra,* dealt specifically with the question of the standard to be applied to maternity leave policies. The court there rejected the stricter standard because "[t]he rights in this case weigh most heavily with the students . . ." 326 F.Supp. at 1213. This approach does not recommend itself to this Court. Under the analysis suggested by the Supreme Court cases cited above, the interests urged in support of a classification should be considered only after making the initial decision as to whether a suspect criterion or fundamental right is present.

The Court disagrees with the plaintiff's assertion that § 4–37's classifications constitute sex discrimination and need not, therefore, pass on the difficult question of whether sex is an inherently suspect criterion. Plaintiff is actually criticizing two distinctions drawn by the Board's maternity leave policy. The first distinction challenged is that made

by the mandatory leave policy as between teachers who are required to stop working during their sixth and subsequent months of pregnancy and for two months thereafter, and all other teachers. The second distinction drawn into question is that made between teachers on maternity leave and those absent from duty on other types of leaves. These obviously do not involve criteria that can be characterized as suspect. See Michelman, *Foreword: On Protecting the Poor Through the Fourteenth Amendment,* 83 Harv.L.Rev. 7, 19–20 (1969). The court in *Williams, supra,* applied the stricter standard because the plaintiff there asserted "the basic right to employment." 340 F.Supp. at 443. There is some support for the theory that the right to employment is fundamental or basic. Truax v. Raich, 239 U.S. 33, 41, 36 S.Ct. 7, 60 L.Ed. 131 (1915); Sail'er Inn, Inc. v. Kirby, 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529, 539 (1971), although the point received no discussion in *Williams.* No decisions in this Circuit have so held, however, and such a decision appears to be foreclosed by dicta in Dandridge v. Williams, 397 U.S. 471, 485–86, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), where the Court stated that the traditional restrained review standard "has consistently been applied to state legislation restricting the availability of employment opportunities."

■ This Court concludes that the traditional standard is applicable here, with the burden upon the plaintiff to show that the classifications in the Board's maternity leave policy are arbitrary and unreasonable and not based upon grounds of difference having a fair and substantial relation to a legitimate object of the Board. *Reed, supra.*

■■ The Board has asserted several grounds for § 4–37's mandatory period of leave. Its first basis is that fixed leave dates for a pregnant teacher before and after delivery facilitate an orderly and standardized procedure by avoiding the administrative difficulties inherent in individual decisions as to the safety and abilities of individual teachers. This

is not an adequate basis for a classification challenged on equal protection grounds. *Reed*, 404 U.S. at 76–77, 92 S.Ct. 251; *cf.* Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 1215, 31 L.Ed. 2d 551 (1972).

The Board also asserts that the leave period is reasonably related to its objective of protecting pregnant teachers and their unborn babies from the assaults, accidents, diseases and physical demands which teachers must normally face. Mrs. Bravo's attending obstetrician—a man of considerable experience in the field—testified that there is no medical reason for her or any other healthy pregnant teacher to stop working after the fourth month of pregnancy. He also testified that there is no greater probability of pregnant women being injured than other women, and that none of the more common complications to pregnancy can be caused by trauma. He further testified that neither standing for extended periods, nor running down stairs or moving quickly, physical activities that could be expected of a teacher, are likely to induce premature labor. The Medical Director of the Chicago Public Schools testified that the primary risk to the fetus of contracting German measles is in the first ten to fourteen weeks of pregnancy, with an additional risk of general infection in the fifth and subsequent months. He further testified that there is no accurate data available regarding the incidence of measles or other communicable diseases among pregnant teachers or school children. The assistant superintendent of the Board in charge of personnel, Mr. Robinson, admitted that the decision that pregnant teachers require more protection from assaults is not based upon any medical or statistical evidence, but only upon the feeling that assaults are dangerous to any woman.

In contrast to the Board's asserted objective of protecting pregnant teachers and their babies from injury in the schools stands the exceptions to the mandatory maternity leave rule and the State's policy on pregnant students. Section 4–37(g) of the Board's rules clearly states that teachers on maternity leave are permitted to serve as day-to-day substitutes. Mrs. Bravo testified that she knows of two cases where pregnant teachers were allowed to continue in their normal positions quite late in their pregnancies. Also, an opinion letter from the State Superintendent of Public Education, which the Board is now considering, has come to the Court's attention. Although the letter discusses the legal and not the medical considerations, in urging school boards not to use pregnancy as a *per se* criterion for the exclusion of students, it necessarily presupposes that the medical dangers to pregnant students do not justify their automatic exclusion. These exceptions to the mandatory leave period and the State's policy on pregnant students raise a question as to whether the Board itself considers its assumptions as to the dangers to pregnant teachers to be valid.

During the hearing, it appeared that one of the Board's concerns was with the continuity of the children's education. Mr. Robinson admitted that the rigid timetable for maternity leaves now in effect actually contributes to discontinuity, as in Mrs. Bravo's case, where she was forced to leave her position just before the end of a grading period and will not be able to return until some three weeks after classes have resumed in the fall.

The Board has not argued that § 4–37 is based upon any effect upon children from the presence of a pregnant teacher.

From the foregoing evidence, this Court concludes that plaintiff has shown a reasonable probability that she will ultimately succeed in proving that the period fixed for maternity leave bears no rational and substantial relationship to any valid purpose of the Board.

Plaintiff's second criticism of the maternity leave policy concerns the difference in treatment accorded to those on maternity leave and those on other types of leave. Plaintiff claims that preg-

nancy should be treated like any other medical condition under the rules for leaves for illness. The following are examples of the differences in treatment under the present rules. Upon the granting of maternity leave, the pregnant teacher's position is declared vacant. The position of a teacher who is on leave because of illness is not declared vacant unless the absence exceeds five school months. When a teacher returns to her school from an extended illness leave, her name is placed at the top of the school's transfer list to fill any vacancies. The teacher who goes on maternity leave can only return to a position at her former school if there are no qualified teachers ahead of her on the transfer list. Mr. Robinson indicated that he thinks that this disparity in employment opportunities is unjust and offered no reason to support it.

Teachers on illness leave are allowed to draw pay for their accrued "sick pay" days; pregnant teachers are not. Pregnant teachers get no seniority for the period of their leave; those on leave for illness do. The Board has offered no reason for these differences in benefits between teachers who are ill and those who are pregnant. Plaintiff has met her burden of showing a reasonable probability of success on her claim that there is no rational and substantial basis for the Board's distinction between pregnancy and other medical conditions for the purposes of determining employment benefits.

Plaintiff has sufficiently established that she and her class have been and are now being denied equal protection of the laws to show that their injury is irreparable. Henry v. Greenville Airport Comm'n, 284 F.2d 631, 633 (4th Cir. 1960); Williams v. School Dist., *supra*; Canty v. Bd. of Educ., City of New York, 312 F.Supp. 254, 256 (S.D.N.Y. 1970); Brass v. Hoberman, 295 F.Supp. 358, 361 (S.D.N.Y.1968).

The Board already has the administrative machinery to deal with leaves granted due to illness. Because of the similarity of the practical consequences of pregnancy and those of illnesses which require that a teacher be absent from her work, it appears that these administrative procedures can readily be adapted to apply to pregnancy cases as well. On the present record, plaintiff has met her burden of demonstrating that the balance of hardships weighs in favor of her and her class. *Williams*, 340 F.Supp. at 450.

An order will issue directing the Board to cease enforcing § 4–37(a), (e), and (f) of its rules. For purposes of sick pay, seniority, and placement of returning teachers on transfer lists, the Board will be further directed to treat maternity leaves as leaves due to illness under § 4–33, and to permit teachers to continue teaching before delivery and to resume teaching after delivery, so long as they present evidence of approval of their attending physicians and their principals to the defendant General Superintendent of Schools at such reasonable intervals as he, or anyone designated by him, may specify.

Counsel for plaintiffs are directed to submit an appropriate draft order, on notice, within ten (10) days of the date of this Opinion. At that time, counsel for plaintiffs and counsel for defendants shall submit briefs on the issues of the effective date of this order and the identity of the class to which it will apply. Within thirty (30) days after the entry of such order, the Board shall cause to be prepared and tendered to this Court such affidavits as may be necessary to demonstrate compliance therewith.

It is so ordered.