QUESTION: Does an employer's policy of requiring female employees to wait two hundred and seventy days before becoming eligible for maternity benefits under a group insurance plan violate Title VII of the Civil Rights Act of 1964?
SUMMARY: A group insurance plan which is offered to governmental employees and which requires that female employees be enrolled for two hundred and seventy days before being eligible for maternity benefits probably violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. Additionally, any governmental sick leave policy that excludes pregnancy or pregnancy-related disabilities from those disabilities for which sick leave with pay may be granted probably also violates the act. According to your letters, the group medical insurance plan offered to governmental employees requires that female employees wait two hundred and seventy days before being eligible for maternity benefits. Additionally, I have been informed that women who are absent from work due to pregnancy or pregnancy-related disabilities are not permitted to use paid accumulated sick leave time but are instead required to use only annual leave time in computing days eligible for leave with pay. Since the group insurance plan and the maternity leave policy outlined above attempt to apply different terms and conditions to pregnancy and pregnancy-related disabilities than those applied to all other temporary disabilities, I am of the opinion that both practices would probably be found violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. Title VII was enacted by Congress in order to eliminate from employment policies and practices the entire spectrum of disparate treatment of men and women resulting from sex stereotypes. Sprogis v. United Air Lines,444 F.2d 1194 (7th Cir. 1971), cert. denied, 404 U.S. 991, on remand, 56 F.R.D. 420. This board prohibition applies not only to hiring and compensation, but also to the terms, conditions, and privileges of the employment. [See] 42 U.S.C. § 2000(e)-2. The administrative body created by Title VII to administer the act, the Equal Employment Opportunity Commission (hereafter E.E.O.C. or commission), has issued the following guidelines, pursuant to 42 U.S.C. § 2000(e)-12, with respect to the question at issue: s. 1604.10 Employment policies relating to pregnancy and childbirth. (a) A written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy is in prima facie violation of Title VII.
(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, and accrual of seniority and other benefits or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities. (c) Where the termination of an employee who is temporarily disabled is caused by an employment policy under which insufficient or no leave is available, such a termination violates the Act if it has a disparate impact on employees of one sex and is not justified by business necessity. 29 C.F.R. Labor, Chapter XIV, Part 1604, As amended (As of March 31, 1972). s. 1604.9 Fringe Benefits. (a) "Fringe Benefits," as used herein, includes medical, hospital, accident, life insurance and retirement benefits; profit-sharing and bonus plans; leave; and other terms, conditions, and privileges of employment. (b) It shall be an unlawful employment practice for an employer to discriminate between men and women with regard to fringe benefits. 29 C.F.R. idem. See also Department of Labor Sex Discrimination Guidelines,39 Fed. Reg. 3338, s. 60-20.3(h)(2), Dec. 27, 1973. While the Commission's Guidelines, 29 C.F.R. s. 1604.10, effective April 5, 1972, do not have the full force and effect of law, the administrative interpretation of the act is entitled to "great deference." Griggs v. Duke Power Co., 401 U.S. 424, 433-434 (1971). Due to the fact that state and local governments were exempt from Title VII until 1972, see Pub.L. 92-261, 86 Stat. 103, there are relatively few cases involving governmental policies relating to pregnancy which have been decided under Title VII. However, the question has arisen frequently under cases presenting claims of denial of equal protection or denial of civil rights under color of state law. See generally, Annot., 17 A.L.R. FED 759 (1973). In this regard, it should be emphasized that even though a state employment practice might be found as not violative of the Fourteenth Amendment under the traditional equal protection standard applied to claims of sexual discrimination, that same practice might well be found to violate Title VII. Compare Schattman v. Texas Employment Comm'n.,459 F.2d 32, 4 FEP Cases 931 (5th Cir. 1972) with Vicks v. Texas Employment Comm'n., 6 FEP Cases 411, 6 E.P.D. 5990 (S.D. Texas, Aug. 30, 1973). There exists today a marked trend of federal decisions under the Fourteenth Amendment which have invalidated state regulations and policies based on sexual classifications unless supported by a valid state interest. See La Fleur v. Cleveland Board of Education, 465 F.2d 1184, 1188 (6th Cir. 1972) and cases cited therein. Those decisions which have spoken directly to the issue presented by the instant situation have held, almost without exception, that a state denies to women the equal protection of the law by treating pregnancy differently from all other temporary disabilities. Buckley v. Coyle Public School System, 476 F.2d 92 (10th Cir. 1973); Heath v. Westerville Board of Education, 345 F. Supp. 501 (S.D.Ohio 1972); Bravo v. Board of Education of the City of Chicago, 345 F. Supp. 155 (N.D.Ill. 1972); Cohen v. Chesterfield County School Board, 326 F. Supp. 1159
(E.D.Va. 1971), rev'd en banc 474 F.2d 395 (4th Cir. 1973), rev'd, 411 U.S. 947 (1974). The continued validity of those few decisions which have upheld regulations and policies which have sought to treat pregnancy differently from other temporary disabilities and, hence, penalized female employees because of their sex, see e.g., Cohen v. Chesterfield County School Board,474 F.2d 395 (4th Cir. 1973); Schattman v. Texas Employment Comm'n., supra, is exceedingly doubtful in light of the recent decisions of the Supreme Court in Cleveland Board of Education v. La Fleur, and its companion case, Cohen v. Chesterfield County School Board. Those decisions and rulings which have dealt with the question of pregnancy and employment under Title VII have supported, almost without exception, the commission's interpretation of the act which forbids a covered employer, either public or private, from treating pregnancy and pregnancy-related disabilities differently from all other temporary disabilities in any "fringe benefit" insurance plan offered to all employees. Additionally, this prohibition is also applicable to sick leave policies which attempt to treat pregnancy differently from all other disabilities for which accumulated sick leave time with pay may be used. See E.E.O.C. Decision #73-0463, Jan. 19, 1973, CCH E.E.O.C. Decisions paragraph 6380 (1973). See also Bravo v. Board of Education, 345 F. Supp. 155 (N.D.Ill. 1972). Such a sick leave policy clearly violates the following Commission Guideline: . . . [w]ritten and unwritten employment policies and practices involving matters such as the commencement and duration of leave . . . formal or informal, shall be applied to disabilities due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities. 29 C.F.R. s. 1604.10(b). Employment policies which violate this guideline have been repeatedly found to violate the act. See, e.g., Marie Leonara v. Board of Education, Jan. 2, 1974, E.P.G. Decisions paragraph 5210; Smith v. Wis. Telephone Co., Jan. 5, 1973, E.D.G., paragraph 5140; Cedar Rapids Community School District v. Parr, May 25, 1972, E.P.G. paragraph 8789. See also Civil Service Comm'n. Regulations on Sick Leave, 5 C.F.R. § 30.401(b) (1973), in which pregnancy is required to be treated as any other disability for which sick leave time must be granted. This approach to the granting of sick leave to pregnant employees has also been followed in opinions written by the Attorneys General of Iowa and Nevada. Iowa Atty. Gen. Op., Aug. 11, 1972, E.P.G. paragraph 5100; Nev. Atty. Gen. Op. #112, Jan. 29, 1973, E.P.G. paragraph 5132. In the recent decision of Wetzel v. Liberty Mutual Insurance Company, 7 FEP Cases 34, Jan. 9, 1974, an insurance company's maternity policies were found to be in violation of Title VII. It was held by the court that the condition of pregnancy may not be singled out for disparate treatment within the conditions and benefits of the employment, i.e., a group insurance plan. Rejected by the court was the defendant's contention that the increased cost of providing equal treatment for pregnancy was a sufficient justification for the different treatment afforded women under the insurance plan. The court noted that E.E.O.C. Guidelines on fringe benefits provide that: It shall not be a defense under Title VII to a charge of sex discrimination benefits that the cost of such benefits is greater with respect to one sex than the other. 29 C.F.R. § 31604.9(e). While the court acknowledged that the company was not required to provide any particular benefits to employees, it also stressed if the employer does in fact provide a benefit, there can be no inequality based on sex. If costs are increased in order to comply with Title VII, then such . . . could be accommodated quite easily by making reasonable changes in the contribution rate, the maximum benefits allowable and the other variables affecting the solvency of the program. Aiello v. Hansen,359 F. Supp. 792 (N.D. Calif. 1973). In response to the argument that pregnancy is a voluntary condition and, therefore, may permissibly be treated differently from all other disabilities, the court responded: Because pregnancy is a natural, expectable and societally necessary condition, which is certain to occur in a statistically predictable number of women in the labor force, we see no merit in Defendant's argument that it may be excluded from equality of treatment in conditions and benefits of employment because it is a voluntary condition. Wetzel, supra, at 44. And, as further noted, in Buckley v. Coyle Public School System,476 F.2d 92, 95 (10th Cir. 1973): The fact, if it be a fact, that a pregnancy is a voluntary status really has nothing to do with the question. The point is that the regulation penalizes the feminine school teacher for being a woman and, therefore, it must be condemned on that ground. Although there is at least one decision under Title VII which has reached an opposite conclusion, see Newmon v. Delta Air Lines, 7 FEP Cases 27 (N.D.Ga. Dec. 31, 1973), which held that pregnancy may be treated differently from other temporary disabilities, I am of the view that this decision is less than persuasive in light of the subsequent action by the Supreme Court in La Fleur and Cohen, supra. The weight of authority, decided under the equal protection clause and Title VII, supports the commission's rulings that pregnancy must be treated like all other temporary disabilities in any fringe benefit plan offered to employees. Accordingly, I am of the opinion that by requiring a two hundred and seventy-day waiting period for maternity payments as a precondition to coverage under a group insurance plan, the state has provided female employees with a "fringe benefit," i.e., a statesponsored insurance plan, which treats pregnancy differently from all other temporary disabilities and, thereby, probably violates the act. Pregnancy is the only temporary disability for which the waiting period is required. Disabilities which occur only in men such as prostatitis or illnesses which occur at a higher frequency among males, i.e., gout, are not subjected to the same waiting period as is pregnancy, nor are males subjected to a waiting period to insure that they do not in fact have pre-existing illnesses or disabilities unique to males. That this requirement imposed solely upon women is sexually biased has already been succinctly analyzed by Chief Judge Brown in his dissent in Philips v. Martin-Marietta Corp., 416 F.2d 1257 (5th Cir. 1969), vacated per curiam400 U.S. 542 (1972), as follows: The distinguishing factor seems to be motherhood . . . . The question then arises: Is this sex-related? To the simple query, the answer is just as simple: Nobody, and this includes judges, Solomonic or life-tenured — has yet seen a male mother. A mother, to oversimplify the simplest biology, must be a woman. 416 F.2d at 1259. Additionally, any governmental leave plan that provides nonoccupational sickness or accident benefits for employees but excludes disabilities due to pregnancy or pregnancy itself, discriminates because of sex and thereby also constitutes a probable violation of Title VII. See FEP Guide, 421:602-612. E.E.O.C. Decision #73-0463, Jan. 19, 1973. CCH E.E.O.C. Decisions paragraph 6380.