Jo Carol LA FLEUR, Plaintiff,

v.

CLEVELAND BOARD OF EDUCATION et al., Defendants.

Ann Elizabeth NELSON, Plaintiff,

v.

CLEVELAND BOARD OF EDUCATION et al., Defendants.

Civ. A. Nos. C 71–292, C 71–333.

United States District Court,
N. D. Ohio, E. D.

May 12, 1971.

Charles F. Clarke, Arthur A. Kola, George W. Pring, of Squire, Saunders & Dempsey, Cleveland, Ohio, for defendants.

Carol S. Agin, Lewis Katz, Cleveland, Ohio, for plaintiffs.

Sidney Picker, Jr., Cleveland, Ohio, amicus curiae, brief submitted by the Women's Equity Action League (WEAL).

MEMORANDUM AND ORDER

CONNELL, District Judge.

This case has been presented to this Court asking for injunction against the defendant, Cleveland Board of Education, from enforcing a regulation of the Cleveland School Board prohibiting teachers who become pregnant from

teaching their classes past the fourth month of pregnancy.

The plaintiffs in the case, Jo Carol La Fleur and Ann Elizabeth Nelson are teachers in the Cleveland public school system. Both teachers are married and pregnant; Mrs. La Fleur is expecting birth of her child sometime from the mid to the end of July of this year, while Mrs. Nelson expects her child on August 26, 1971.

Mrs. Jo Carol La Fleur, C 71-292, is a teacher at Patrick Henry Junior High School and has taught her class from September 1970 until March 12, 1971, when, due to the enforcement of the school board regulation, she was asked to discontinue her duties due to her pregnancy. The plaintiff, La Fleur, taught a seventh grade class composed exclusively of girls who are designated as under-achievers or problem children. This class is called a "project transition" class which is supervised and operated by the Cleveland public schools and partially funded with Federal money. This class is composed exclusively of girls, about twenty-five in number, who are to be given special attention for purposes of making them ready for the eighth grade in school. Mrs. La Fleur did not request the maternity leave, rather the regulation was enforced as to this plaintiff and her maternity leave was involuntary. Presently, in her absence, the class is being taught by a substitute teacher.

The plaintiff, Ann Elizabeth Nelson, C 71-333, is a French teacher at Central Junior High School. She has taught French to seventh, eighth and ninth grade students since September 1970. Mrs. Nelson reported her pregnancy to her principal on January 29, 1971, and applied for maternity leave.

This case came on for hearing on April 19, 1971. The issues being identical in nature, the cases were tried and submitted together and both will be decided in this memorandum and order.

The regulation in question concerns maternity leaves of absence for teachers and is stated on pages 20-21 of the teachers handbook, Joint Ex. 1. The regulation provides that:

"Any married teacher who becomes pregnant and who desires to return to the employ of the Board at a future date may be granted a maternity leave of absence without pay."

The application of this regulation provides that the absence shall be effective not less than five months before the expected date of the normal birth of the child. Further, the regulation states that in application; this leave of absence shall be effective not less than five months before the expected date of the normal birth of the child, and application for such leave to the superintendent at least two weeks before the effective date of the leave of absence.

The plaintiffs contend that this regulation discriminates against the plaintiffs as female employees with respect to their employment and deprives them of their "rights, privileges and immunities secured by the Constitution and laws of the Civil Rights Act of 1871, (42 U.S.C. § 1983)." Plaintiffs pray this Court grant a Declaratory Judgment ruling that the policies and practices of the school board are unlawful, and further the plaintiffs request the granting of a preliminary and permanent injunction enjoining the Cleveland Board of Education from discriminating against the plaintiffs on the "basis of sex with respect to the terms and conditions and privileges of her employment and compensation thereof in deprivation of her rights, privileges and immunities secured by the United States Constitution and laws and the Civil Rights Act of 1871."

The defendants maintain that the regulation is a "valid exercise of the school board's statutory authority to make rules and regulations for its government and the government of its employees and the pupils of the school, pursuant to Ohio Revised Code Section 3313.20." The defendants further contend that "the maternity leave policy violates no constitutional rights of the plaintiff and

is not discriminatory in any sense, let alone a per se discrimination based wholly on sex."

This Court reads the complaint as being brought pursuant to 42 U.S.C. § 1983 for an alleged violation of the plaintiffs' guarantee of equal protection under the Fourteenth Amendment to the United States Constitution. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343; giving the district court original jurisdiction to hear cases for redress of deprivations arising under color of State law for alleged violations of privileges or immunities secured by the Constitution of the United States or by any act of Congress providing for the equal rights of citizens.

It is necessary to point out that the plaintiffs have not brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

The facts show that the maternity regulation in question was adopted in the early fifties upon the request of Dr. Mark C. Schinnerer, Superintendent of the Cleveland public schools. Prior to this time no maternity leave regulation had been in effect. The rule as it appears today is essentially the same as it was when adopted. The change in the rule now permits the mother to return at the beginning of the semester following the age of three months of the new child rather than the six months as previously provided. Also, the regulation now asks for one month's notice of pregnancy leave prior to the termination of employment rather than two weeks' notice as stated in the regulations as it now appears.

The evidence shows that prior to the rule, the teachers suffered many indignities as a result of pregnancy which consisted of children pointing, giggling, laughing and making snide remarks causing interruption and interference with the classroom program of study. The evidence shows that there were numerous reports of similar incidents which brought about the need for the Board of Education to prevent the continuance of this disruptive situation.

The evidence further shows that there were many instances where teachers refused to voluntarily withdraw from teaching until the birth of the child; and although no child was born in the classroom, a few times it was very close. The evidence shows that in one instance where a teacher's pregnancy was advanced, children in a Cleveland junior high school class were "taking bets on whether the baby would be born in the classroom or in the hall." Dr. Schinnerer testified that the purpose of this rule was to protect the teacher and maintain the continuity of the classroom program; the prevention of disruption in the educational process. When the regulation was presented to the Board of Education for adoption, at a public meeting, the vote of the Board of Education was unanimous.

The Cleveland Board of Education is concerned with the well-being of over 5800 teachers, of which 3774 are women. It is further pointed out that fifty percent of these women are of childbearing age, and that an average of 225 teachers are on maternity leave at all times.

A plaintiffs' witness testified that the incidence of violence in the Cleveland schools had increased steadily over the last ten years. The concurring evidence of Mr. Julius Tanczos, Supervisor of Secondary Organization of the Cleveland public schools shows that there were 256 assaults upon teachers by pupils and others, within the school buildings in the 1969–70 school year. The record shows that up to the date of the lawsuit, 140 such assaults had already taken place. The school system classifies an assault as the physical contact with the person or the threatening of a teacher with a weapon. This year alone, there has been the confiscation of 46 guns and 18 knives in the Cleveland public schools. Further it is shown that there were 136 teachers accidentally injured as the result of falls in corridors and hallways during the 1969–70 school year.

The duties of a teacher in the Cleveland public schools require her to be on

her feet much of the day, and aside from teaching, they include the maintenance of order in the classrooms and the supervision of the movement of students in the halls, corridors and sometimes in the cafeterias. In addition to the teachers, the public school system employs 132 security guards which are stationed in the secondary schools, grades seven thru twelve, for the specific purpose of maintaining order and keeping outsiders from entering the school building.

With respect to the health of a pregnant teacher, during a normal pregnancy, the woman should gain between fifteen and twenty pounds. Pregnancy is a normal condition; and these individuals may continue to lead normal lives, however, the evidence shows complications can arise and the resulting effects can be very serious.

The evidence shows that toxemia occurs in as high as ten percent of pregnancies. This condition can occur slowly and may be unforeseen and will prohibit the individual from working until the condition is brought under control. The more serious complication of placenta previa occurs in one percent of the pregnancies and this condition is very serious and its gravity greatly increases should it occur after the sixth month. This condition can be brought about by a sudden or violent physical exertion and can result in the woman's death; immediate hospitalization is required.

It is further shown that the frequency of urination increases during the last three months of pregnancy, the woman's agility is impaired, and strenuous, sudden, physical exertion is forbidden.

The evidence shows that the primary purpose for the initiation of this rule was to protect the continuity of the classroom program. The school board maintains this rule in an attempt to bring the disruption of the classroom program to a minimum. They further maintain that use of the one month advance notice requirement gives the school board the most accurate indication as to when the teacher will discontinue her duties and the new instructor will assume the responsibility of the study program. The purpose is also to allow the new teacher to become familiar with the classroom program and the students under the guidance of the original teacher who is about to depart. Furthermore, the purpose is to give the school board notice so that the original teacher's unexpected and sudden leave will not occur, and thus guaranteeing classroom continuity and providing the best possible safeguard against the disruption of the students' education. The intended purpose of the section in the regulation which permits the teacher to return at the beginning of the regular school semester following the child's age of three months is designed to protect the health of the mother and the child and assure continuity of the classroom program.

The Cleveland Board of Education is authorized to initiate such rules and regulations pertaining to employees and pupils as are necessary for the operation of its government. See Ohio Revised Code § 3313.20. The regulation in question had been made pursuant to this state statute and from this state action the Fourteenth Amendment question comes before this Court.

In Morey v. Doud, 354 U.S. 457, 463–464, 77 S.Ct. 1344, 1349, 1 L.Ed.2d 1485 (1954) the Court summarized the rules for testing discrimination under the Fourteenth Amendment and states as follows:

"The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reason-

ably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon a reasonable base, but is essentially arbitrary. Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 78–79, [31 S.Ct. 337, 55 L.Ed. 369] (1911).

In speaking of the "Equal Protection" clause of the Fourteenth Amendment, the Court in McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L. Ed.2d 393 (1960) stated:

> "the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their law results in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

In Williams v. McNair, D.C., 316 F. Supp. 134, 136 (1970) a three judge panel in deciding whether men have the right to gain admission to an all girl's college said:

> "The Equal Protection Clause of the Fourteenth Amendment does not require identity of treatment for all citizens, or preclude a state, by legislation, from making classifications and creating differences in the rights of different groups. It is only when the discriminatory treatment and varying standards, as created by the legislative or administrative classification are arbitrary and wanting in any rational justification that they offend the Equal Protection Clause." (Citations omitted.)

Limitations placed upon women have been held as non-discriminatory. In Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908) the Court in deciding upon a work hour limitation statute pertaining to women took into consideration the differences in the sexes and said:

> "The two sexes differ in structure of body, in the functions to be performed by each, in the amount of physical strength, in the capacity for long continued labor, particularly when done standing, the influence of vigorous health upon the future well-being of the race, the self-reliance which enables one to assert full rights, and in the capacity to maintain the struggle for subsistence. This difference justifies a difference in legislation, and upholds that which is designed to compensate for some of the burdens which rest upon her."

The Court in Seidenberg v. McSorleys' Old Ale House, Inc., D.C., 317 F.Supp. 593 (1970), found no justification for a rule which excluded women as potential customers in an ale house while giving preference to men.

This court finds that the enormous task of providing an education for thousands of young students, and the regulations enacted in the furtherance of this purpose has no relevance to a regulation enacted by an ale house prohibiting the sale of alcoholic beverages to women and will be given no weight by this Court.

The plaintiffs cite Schattmann v. Texas Employment Commission, 3 CCH para. 8146, p. 6459 (W.D.Tex.1971) in which jurisdiction for relief is based upon Title VII of the Civil Rights Act of 1964, § 2000e et seq. of Title 42 U.S.C., as earlier pointed out, this is not the basis of jurisdiction in the instant case and the resulting difference in the applicable test is afforded little consideration. Furthermore, *Schattmann* did not involve a situation in which the education of children presented a most important issue. In *Schattmann*, supra, p. 6460, the stipulation that the plaintiff "was a

permanent desk worker whose job entailed no significant physical exertion of personal contact with the public" could not be further from the necessary demands of a junior high school teacher responsible for the education of students in the Cleveland schools.

The plaintiffs maintain that the traditional "reasonable basis test", *Lindsley, supra,* is not applicable in this case. Their contentions being that Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), requires that for this Court to uphold the regulation in question the states meet the burden of showing a compelling state interest. In *Shapiro,* what was in question was the plaintiff's right to travel in interstate commerce and its resulting qualification for public assistance. In this instance the Court stated on page 638, 89 S.Ct. on page 1333:

> "Since the classification here touches on the fundamental right of interstate movement, its constitutionality must be judged by the stricter standard of whether it promotes a compelling state interest."

The *Shapiro* case requires a stricter standard in judging cases involving fundamental rights. However, allegations alone are not the criteria for automatic application of this standard.

The plaintiffs, citing *Shapiro,* presume their contentions are of fundamental concern preempting the considerations of the school board and giving rise to the application of this stricter standard. The primary duty of the school board is to educate students, and if necessary, regulations may be enacted in the furtherance of this function. Education is the right of a child, and the school board is before this Court protecting these rights which involved the thousands of students within its jurisdiction.

Speaking of this right, the Supreme Court stated in Brown, et al. v. Board of Education of Topeka, et al., 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954) that:

> "Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms."

The rights in this case weigh most heavily with the students, and this Court holds that those assaulting this most serious concern of the school board must meet the traditional equal-protection test of showing that the regulation is without a reasonable basis.

The Cleveland public schools had operated prior to the early 1950's without this maternity leave rule, and the experiences were such that the Board was compelled to adopt a regulation to remedy this impediment to its educational function.

This requirement of maternity leave gives the school the best assurances that sudden disruption of the students' classroom program due to an unforeseen complication in the teacher's condition will be minimized. The requirement of advance notice of termination also allows time for a substitute teacher to work and train with the intended class prior to assuming her full responsibilities, further maintaining continuity in the classroom program. The provision for resumption of employment after the child's birth serves the purposes of maintaining classroom continuity and protecting the health of the mother and child.

This regulation has minimized the classroom distractions and disruptions which had occurred prior to its adoption, further attesting to its necessity and reasonableness, and this court so finds.

The problem of the teacher's health and safety, before and after the child's birth, is of itself a valid concern of the school board aside from its interest in the students' education.

In an environment where the possibility of violence and accident exists, pregnancy greatly magnifies the probability of serious injury.

This court finds that for the reasons stated herein, the regulation in question

**1214**

is entirely reasonable, and most adequately meets the prescribed tests.

This court finds that the Cleveland Board of Education has not discriminated as to women whose condition is attendant to their sex.

This court finds that there is a reasonable basis for the rule which distinguishes pregnant teachers from all other teachers.

This court finds that no showing of a violation of the plaintiffs' constitutional rights has been made.

This court finds that the regulation furthers the design for quality education, and serves the important interests of the students in implementing this fundamental right.

This court finds that the plaintiffs' burden of showing that the maternity leave of absence is arbitrary and unreasonable has not been sustained.

In accordance, the maternity regulation of the Cleveland Board of Education is sustained in its entirety.

This constitutes the findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

It is so ordered.