Carol **HEATH**, Plaintiff,

v.

**WESTERVILLE BOARD OF EDUCATION et al., Defendants.**

**Civ. No. 71–379.**

United States District Court,
S. D. Ohio, E. D.

June 28, 1972.

Kenneth C. Curtin, Columbus Legal Aid & Defender Society, Diane R. Liff, Ohio State Legal Services Assn., Columbus, Ohio, for plaintiff.

Robert T. Baker, Columbus, Ohio, for defendants.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This matter is before the Court on the respective briefs of the parties and following an evidentiary hearing on the complaint. The issue to be decided involves the constitutionality under the Equal Protection Clause of the Fourteenth Amendment of certain regulations, adopted by the Board of Education of the Westerville City (Ohio) School District, regarding the employment status of pregnant, female employees. Based upon evidence appearing in the record the Court, pursuant to Rule 52(a), Federal Rules of Civil Procedure, makes the following findings of fact:

### I

### FINDINGS OF FACT

(1) Plaintiff Carol Heath is a married female and resident of Columbus, Ohio. She was employed as a public school teacher by the defendant Board of Education under a contract of employment for a term beginning in September, 1971 and ending in June, 1973. During the 1971–1972 school year Mrs. Heath was assigned to teach and actually taught at Walnut Springs Junior High School, Westerville, Ohio. Mrs. Heath became pregnant during May, 1971, while the above mentioned contract was in force.

(2) Effective August 1, 1970 the policy adopted by the Westerville Board of Education governing eligibility for maternity leave was contained in Paragraph 51(11)3.1, which paragraph provides as follows:

Any married woman employee of the Westerville Board of Education who becomes pregnant or adopts a child one year old or younger after three or more consecutive years of regular service in the Westerville Public Schools, immediately prior to her request for leave, and who desires to return to the employ of the Westerville

Board of Education at a future date, may be granted a maternity leave of absence without pay. A maternity leave of absence shall extend for one calendar year following the birth of the child or the date of adoption plus any remaining portion of the school semester which may then be in progress. Such leave may be renewed for one or two semesters. Westerville Board Procedure—Section 51(11)3.1

Mrs. Heath was not eligible for a maternity leave under the requirements of this provision.

(3) Effective August 1, 1970, the policy adopted by the Westerville Board of Education, governing termination of staff personnel under contract for reason of pregnancy, was contained in paragraph 5313.3, which provides as follows:

It is the procedure of the Westerville Board of Education that no woman employee remain in her position of working assignment beyond the fifth month of pregnancy. Not later than the end of the fourth month of pregnancy or at such time as the employee's physical or emotional condition interferes with the regular and satisfactory performance of her duties, the employee must file a letter of resignation if she is not eligible for a leave of absence. The letter of resignation should be accompanied by a statement from the attending physician giving the approximate date of delivery.

The one year, post-delivery waiting periods as set out in paragraph 51(11)3.1, *supra,* is applicable to situations arising under paragraph 5313.3.

(4) Mrs. Heath did not submit a resignation in conformity with paragraph 5313.3 and upon a hearing held by the School Board on December 13, 1971, her contract of employment was terminated. Mrs. Heath's last day of teaching was October 1, 1971, and she received no payments on her contract after such date.

(5) Mrs. Heath performed satisfactorily under her contract and was at all times a well qualified teacher. But, for her pregnancy she would have, in all likelihood, been allowed to complete her contractual term of employment.

## II

### OPINION

The issue in controversy may be summarized in the following question: May a school board, consistent with its constitutional obligations under the Equal Protection Clause of the Fourteenth Amendment, discharge an otherwise qualified female employee solely because she has entered her sixth month of pregnancy? On the state of the record before us this Court holds that it may not.

■■■■ The Equal Protection Clause does not prohibit a state or one of its agencies from drawing distinctions between groups and legislating differently for the various groups so designated. See, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Williams v. San Francisco Unified School District (N.D.Cal.1972) 340 F.Supp. 438. However, "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike." F. S. Royster Guano Co. v. Com. of Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920); also see, Goesaert v. Cleary, 335 U.S. 464, 466, 69 S.Ct. 198, 93 L.Ed. 163 (1948) (per Frankfurter, J.); Harper v. Virginia State Board of Elections, 383 U.S. 663, 673–674, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1967) (Black, J., dissenting). This fundamental principle of the Equal Protection Clause has recently been explicitly extended to situations involving legislative discriminations on the basis of sex. See, Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). In Reed v. Reed, *supra,* the Court held that a provision of the Idaho Probate Code, which granted males a legal preference

over women in situations where both were equally qualified to administer a decedent's estate, was violative of the Equal Protection Clause.

■ Despite the rising crescendo of controversy about Women's Liberation which has been raging in the popular press recently, this Court is willing to conclude that there are certain ineluctable differences between men and women and between pregnant and nonpregnant women. Legislation attempting to draw a distinction between these groups is not *per se* violative of the Equal Protection Clause. However, in the case at bar the defendant Board of Education has completely failed to demonstrate a rational, non-arbitrary basis in fact for the regulations in question and a tenuous relationship between them and the ends sought to be achieved. No persuasive evidence has been adduced which tends to support the Board's contention that the mandatory retirement of pregnant school teachers between their fourth and fifth month of pregnancy is either medically, psychologically or administratively justified. There is, in fact, evidence in the record which compels a conclusion contrary to the one urged upon this Court by the defendant Board. It appears that the first trimester of pregnancy (months 1–3), and not the second (months 4–6) are the most dangerous, in medical terms, to the expectant mother. Yet the Board does not require the pregnant teacher to resign at the outset of pregnancy, but rather,

somewhat illogically, during the second trimester. Nor can this Court accept the Board's argument that its policy is designed to lower the level of trauma young students experience when they are separated from their teacher. On the contrary, by holding fast to an inflexible policy which mandates the removal of teachers from students for at least four months of pregnancy and one year after delivery, the Board has ordained lengthy separations of this sort.

■ It is the very inflexibility of the Board's policy which casts a light of dubious constitutionality about its regulations. Pregnancies, like law suits, are *sui generis*. While there are certain general similarities between each pregnancy, no two are entirely identical. While it may be quite true that some women are incapacitated by pregnancy and would be well advised to adopt regimens less strenuous than those borne by school teachers, to say that this is true of all women is to define that half of our population in stereotypical terms and to deal with them artificially. Sexual stereotypes are no less invidious than racial or religious ones. Phillips v. Martin-Marietta Corporation, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971); Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (7th Cir., 1971). Any rule by an employer that seeks to deal with all pregnant employees in an identical fashion is dehumanizing to the individual women involved and is by its very nature arbitrary and discriminatory.[1]

1. It should be added that other societies have totally different responses to the fact of pregnancy and consider it a far less debilitating condition than does American society. Ashley Montague, an eminent anthropologist notes in this regard that:

> In some nonliterate societies some women take much less time than [four or five days] to return to their normal household chores. In food-gathering cultures, such as those of the Bushman of South Africa and the Australian aborigines, the fact that a woman is pregnant or that an hour ago she gave birth to a child is generally responsible for no deviation whatever from her customary

manner of living, except for the additional task of nursing. It sometimes happens that on the march, in wandering from one food area to another, a woman falls out, gives birth to her child, catches up with her companions, and behaves very much as if nothing extraordinary has happened. Montague, The Natural Superiority of Women, at 16–17 (rev. ed. 1970).

This tends to suggest that the defendant Board's very solicitous treatment of pregnancy, including the requirement that the new mother not return to her job for one year following delivery is more a manifestation of cultural sex role con-

**506**

■ These unlawful legislative characteristics are present in the regulations now before the Court. Mrs. Heath desired to continue her teaching duties well into the late stages of her pregnancy and her doctor, representing a significant and respectable school of modern medical thought, believed this was appropriate in her case. The Westerville School Board has not convinced this Court it was justified in not allowing her to do so. We agree with Judge Merhige that "since no two pregnancies are alike, decisions of when a pregnant teacher should discontinue working are matters best left up to the woman and her doctor." Cohen v. Chesterfield County School Board, 326 F.Supp. 1159, 1160 (E.D.Va.1971); also see, Williams v. San Francisco Unified School District, *supra*. In our opinion this conclusion is mandated by Reed v. Reed, *supra*, which at the very least stands for the proposition that the courts must not allow the state or its agencies to perpetrate old sexual stereotypes, in the guise of benign, protective statutes, where the state is unable to demonstrate a rational, non-arbitrary basis in fact for its regulation.[2]

The defendant Board has further argued that its maternity policy is dictated by sound administrative considerations including the availability of substitute teachers. However, the Board has failed to differentiate pregnancy from other temporarily debilitating conditions. It appears to this Court that in some ways pregnancy creates less of an administrative problem in this regard than do truly unexpected accidents or illnesses. We therefore agree with and embrace the holding of Cohen v. Ches-

terfield County School Board, *supra*, in its entirety and in turn hold that:

> The maternity policy of the School Board denies pregnant women such as [plaintiff] equal protection of the laws because it treats pregnancy differently than other medical disabilities. Because pregnancy, though unique to women, is like other medical conditions, the failure to treat it as such amounts to discrimination which is without rational basis, and therefore is violative of the [Equal Protection Clause of the Fourteenth Amendment to the United States Constitution]

Id., 326 F.Supp. 1159, 1161 (citations omitted).

We so hold even though defendant Board urges us to follow the contrary result reached in LaFleur v. Cleveland Board of Education, 326 F.Supp. 1208 (N.D.Ohio, E.D.1971). However, *LaFleur* is distinguishable, in our opinion, from the case at bar. The holding in *LaFleur* rested in large measure on specific findings by the Court that the high incidence of physical violence in the Cleveland public schools against teachers placed pregnant women teachers in some jeopardy. The *LaFleur* rationale was not advanced in the case at bar; nor is any evidence regarding physical danger to teachers in the Westerville public school system contained in the record herein. We, therefore, respectfully decline to follow the decision of our sister district to the north. See, Williams v. San Francisco Unified School District, *supra*.

**III**

**CONCLUSIONS OF LAW**

(A) The Court has jurisdiction over the parties herein.

ditioning than a response to medical fact and necessity. The fact that Mrs. Heath does not fit neatly into the stereotyped vision the defendant Board has of the "correct" female response to pregnancy should not redound to her economic or professional detriment.

2. Because the defendant Board has failed to satisfy even the fundamental Equal Protection Clause standard of reasonableness, it is unnecessary for this Court to decide whether the Board is required to meet the "more rigid scrutiny" or "compelling government interest" standard of Shapiro v. Thompson, *supra*.

■ (B) This action is properly brought under the provisions of 42 U.S.C. § 1983 and subject matter jurisdiction of the Court is properly invoked under 28 U.S.C. § 1343(3). LaFleur v. Cleveland Board of Education, *supra;* Williams v. San Francisco Unified School District, *supra;* Cohen v. Chesterfield County School Board, *supra;* Guelich v. Mounds View School District, 4 F.E.P. 338 (D.Minn., Nov. 22, 1971). Jurisdiction is also proper under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

■ (C) It is within the right of defendant School Board to adopt a policy holding that when a pregnant woman can no longer perform the duties she was hired to perform because of her pregnancy, she must resign her position. But this policy must provide for a case by case determination of inability to perform teaching duties for reasons of pregnancy.

■ (D) Any regulation which sets an arbitrary and fixed date by which pregnant employees must resign must be based on presumptions concerning sexual characteristics and roles as no two pregnancies present identical medical or psychological problems. Such a regulation, unless it is supported by a reasonable, factual basis is discriminatory against women and, therefore, violative of the Equal Protection Clause of the Fourteenth Amendment. Reed v. Reed, *supra;* also see, Phillips v. Martin-Marietta Corporation, *supra.*

■ (E) Such portions of the regulations of the Westerville School Board requiring the mandatory resignation of pregnant employees after their fifth month of pregnancy are without a reasonable, non-arbitrary basis in fact. They, therefore, violate the Equal Protection Clause of the Fourteenth Amendment and are hereby declared null and void and will be permanently enjoined. Cohen v. Chesterfield County School Board, *supra;* Williams v. San Francisco Unified School District, *supra.*

(F) Such portions of the regulations of the Westerville School Board that require a female employee to wait one (1) year following delivery before being eligible for re-employment conflict with Conclusion of Law (D), as set forth above. They, therefore, violate the Equal Protection Clause of the Fourteenth Amendment and are hereby declared null and void and will be permanently enjoined.

■ (G) Such portions of the regulations of the Westerville School Board, which attempt to distinguish in terms of maternity leave policy between the untenured pregnant teacher of more than three years service and the untenured pregnant teacher of less than three years service, are arbitrary and have no rational connection with the policies underlying Ohio's school teacher tenure laws. They, therefore, violate the Equal Protection Clause of the Fourteenth Amendment and are hereby declared null and void and will be permanently enjoined. Jinks v. Mays, 332 F.Supp. 254 (N.D. Ga.1971).

(H) Plaintiff's discharge from her employment by defendant Board, effective October 1, 1971, by reason of her pregnancy, and under color of the regulations nullified above in Conclusions of Law E, F and G, violated her constitutional right to the equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. Reed v. Reed, *supra.*

■ (I) The action of the defendant School Board seeking to terminate the contract between the parties dated April 13, 1971, is hereby set aside and such contract is reinstated in full. Plaintiff shall receive her fixed salary from the time it was discontinued on October 1, 1971 and all the other rights and benefits that she would have accrued, including but not limited to accrued seniority rights and health and life insurance plans, that would have been rightfully hers if the contract had not been terminated by the defendant

Board. This backpay award under our order of reinstatement is in the nature of equitable relief and is authorized by Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); also see, Schreiber v. Joint School District No. 1, Gibralter, Wisconsin, 335 F.Supp. 745 (E.D.Wis.1972); Lee v. Board of Regents of State Colleges, 441 F.2d 1257 (7th Cir., 1971). However, this award will be reduced by the amount equal to eight (8) weeks salary which constitutes a reasonable pre-delivery and post-natal care period.[3] Doe v. Osteopathic Hospital of Wichita, Inc., 333 F.Supp. 1357 (D.Kansas, 1971).

(J) The defendant Board shall adopt new maternity leave regulations pursuant to its obligations under law, but these shall not be inconsistent with the views expressed herein.

It is so ordered.

3. We make this particular award to Mrs. Heath on the basis of the record now before us and reasonable interpretations that can be deduced therefrom. We do not mean to suggest that the Board, in formulating regulations to replace the ones which have today been invalidated, cannot, in appropriate cases, require teachers to take a longer, or permit them to return after a shorter period of time, for pre-delivery and postnatal care, than the eight week period employed in this case.