**Sharon DEMKOWICZ, Plaintiff,**

v.

**Joseph ENDRY et al., Defendants.**

**Civ. A. No. 73–406.**

United States District Court,
S. D. Ohio, E. D.

Sept. 16, 1975.

Leonard J. Schwartz, Columbus, Ohio, for plaintiff.

James Thompson, Reynoldsburg, Ohio, for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 (1970) and the Fourteenth Amendment to the United States Constitution. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331(a) and 1343(3) (1970). Plaintiff seeks injunctive relief ordering her reinstatement as a public school teacher in the Reynoldsburg, Ohio, school system, and an award of back pay. The amount in controversy exceeds $10,000, exclusive of interest and costs. The first cause of action was tried to the Court; this opinion includes the Court's findings of fact and conclusions of law, pursuant to Fed.R. Civ.P. 52(a).

## I. FINDINGS OF FACT

### A. *Sharon Demkowicz*

The named plaintiff in this cause is certified by the State of Ohio to teach English

and journalism to high school and junior high school students. She graduated from college in 1968, and taught English in Bellaire, Ohio, for one year before she entered into a one-year contract to teach English and journalism at Reynoldsburg High School during the 1969–1970 school year. Her performance was judged to be satisfactory, and her contract was extended for a two-year period. She taught only three academic semesters of this contractual term, tendering her resignation effective January 27, 1972.

In September of 1971, during the first week of the school year, Mrs. Demkowicz approached defendant Joseph Endry, principal of Reynoldsburg High School, and informed him that she was pregnant with her first child. Mr. Endry read to Sharon Demkowicz the maternity leave policy then in effect in the Reynoldsburg Local School District.[1] The policy is set out in the margin;[2] it provided that the employment of a pregnant teacher be terminated ninety days before the expected date of delivery, and that teachers with three or more years experience in the school system could request a leave of absence from their employment. The policy did not provide for a leave of absence for teachers who had less than three years experience in the system, such as Mrs. Demkowicz; it provided that such teachers "may apply for re-employment in the school system."

Mr. Endry not only informed Mrs. Demkowicz of the school board policy concerning teacher pregnancies, but also informed her of its application to her circumstances. He informed her that since she had less than three years' tenure in the system, she was in effect required to tender her resignation within the time frame established by the board's policy, or be terminated. She was not informed that on a few occasions in the past, exceptions had been made for some teachers with less than three years tenure in the system.

By a cordial letter under date of November 19, 1971, Mrs. Demkowicz informed defendant Robert P. Heischman, superintendent of the Reynoldsburg Local School District, of her pregnancy, and of her resignation as of the end of the fall semester. She also expressed her desire "that my contract be considered for renewal for the 1972–73 school year. I have enjoyed teaching here for the past two and one half years, and would like very much to return in September."

Sharon Demkowicz did not mention the pregnancy leave policy of the school board in her letter of resignation, but she did in fact resign because of the policy and the construction of the policy provided her by Mr. Endry, her principal. Mrs. Demkowicz considered her pregnancy a temporary interruption of her teaching career; I find that but for the policy of the Reynoldsburg Board of Education, Sharon Demkowicz would have taken a leave of absence of seven (7) weeks during the second semester of the 1971–1972 academic year, and returned to work late in that year.

The Court also finds that had plaintiff not been required to submit her resignation in the middle of the school year, her contract would have been renewed in succeeding years. Mr. Endry explained at trial that Mrs. Demkowicz was an "average" teacher, and that such a teacher stands a better chance of being renewed than of

1. Now the Reynoldsburg City School District.

2. The policy, revised in March of 1963, provided as follows:

The employment of any pregnant female employee will be terminated ninety days before the expected date of delivery, or as soon thereafter as a qualified replacement can be secured. She shall have her physician send a signed statement, when requested by the executive head, to the clerk of the Board of Education, showing expected date of delivery.

Teachers whose employment has been terminated because of pregnancy may apply for re-employment in the school system. Teachers who have been employed in the local school system for three or more years may request a leave of absence to become effective ninety days prior to the expected delivery date.

being rehired. "She had resigned, and it didn't put her in the same category as other people who were being renewed." Transcript at 115. Asked whether he would have recommended a renewal of plaintiff's contract at the end of the school year if she had not resigned, Mr. Endry answered, "I don't know any reason I would not have wanted to renew her contract. I think we would have gone along with another couple of years." Transcript at 95. See also transcript at 103–104 and 133–134.[3]

During the interim between her resignation and the commencement of the 1972–1973 school year, Sharon Demkowicz remained in touch with defendant Cherry, an administrative assistant superintendent to the Reynoldsburg School Board, and with the board office. She contacted Mr. Cherry or the board office when she learned of openings in her field at the high school. She did not apply to other schools during that period, because she believed it to be likely that she would be offered another contract. She was not. During subsequent years she renewed her applications with the Reynoldsburg system, and submitted applications to other school systems in the Columbus, Ohio, metropolitan area as well. She also registered with an employment agency in Columbus. She was unable to secure employment in the teaching field; she worked for a brief period for the employment agency with which she was regis-

tered, but for the most part she has remained unemployed since she resigned in January of 1972.

**B.** *The Defendant Individuals*

The defendants in this cause include the president and the other members of the Reynoldsburg Board of Education, the administrative assistant to that body, the superintendent of the Reynoldsburg Local School District, and the principal of Reynoldsburg High School. Each of these men played a role in plaintiff's resignation, either by permitting the challenged maternity policy to remain in effect during the 1971–1972 school year, or by enforcing the policy in Sharon Demkowicz's case.

The defendants assert that they acted at all times pertinent to this case in good faith and in the reasonable belief that the challenged maternity leave policy was constitutional. The following chronology of events is relevant to this assertion:

1. *May 12, 1971.* The United States District Court for the Northern District of Ohio held that mandatory maternity leave policies were constitutional. *LaFleur v. Cleveland Board of Education,* 326 F.Supp. 1208.

2. *May 17, 1971.* The United States District Court for the Eastern Division of Virginia held that such policies were unconstitutional. *Cohen v. Chester-*

---

**3.** The plaintiff has argued before this Court that her contract was in fact renewed by operation of law. Section 3319.11 of the Ohio Revised Code provided, in part, as follows in 1972:

> Any teacher employed under a limited contract, and not eligible to be considered for a continuing contract, is, at the expiration of such limited contract, deemed re-employed under the provisions of this section at the same salary plus any increment provided by the salary schedule unless the employing board, acting on the superintendent's recommendation as to whether or not the teacher should be re-employed, gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April.

Ms. Demkowicz argues that the policy which led to her resignation was unconstitutional, and that the resignation itself was therefore a nulli-

ty. Under such an analysis, Sharon Demkowicz was still employed by the system in April of 1972, and, in the absence of notice of termination by the school board, her contract was renewed by operation of R.C. § 3319.11. *Cf. Wagner v. Little Rock School District,* 373 F.Supp. 876, 883 (E.D.Ark.1973):

> [O]nce the midyear termination was found to have been ineffective and therefore a nullity, Mrs. Wagner continued as a teacher in the Little Rock School District and her contract was renewed during succeeding years because defendant failed to conform to Arkansas law.

Since I have found as a factual determination that had Sharon Demkowicz been permitted a leave of absence, her contract would have been renewed in succeeding years, I do not reach the question whether it was renewed by operation of Ohio law.

*field County School Board*, 326 F.Supp. 1159.

3. *November 19, 1971.* Sharon Demkowicz submitted her resignation without protest.

4. *June 28, 1972.* The United States District Court for the Southern District of Ohio held that mandatory maternity leave policies were unconstitutional. *Heath v. Westerville Board of Education*, 345 F.Supp. 501.

5. *July 27, 1972.* The United States Court of Appeals for the Sixth Circuit reversed the decision of the district court in *LaFleur*, and held that such policies were unconstitutional. 465 F.2d 1184.

6. *January 15, 1973.* The United States Court of Appeals for the Fourth Circuit reversed the decision of the district court in *Cohen*, and held that such policies were constitutional. 474 F.2d 395.

7. *February 20, 1973.* The Reynoldsburg Board of Education modified its maternity policy, providing, *inter alia*, that all pregnant teachers were entitled to a one-year leave of absence without pay.

8. *April 23, 1973.* The United States Supreme Court granted certiorari in both *LaFleur* and *Cohen*. 411 U.S. 947, 93 S.Ct. 1925, 36 L.Ed.2d 408.

9. *June 19, 1973.* Plaintiff's counsel wrote defendant Cherry and demanded her reinstatement, citing *Heath v. Westerville Board of Education, supra.* Defendants did not reply.

10. *January 21, 1974.* The Supreme Court decided *LaFleur* and *Cohen*, holding that inflexible mandatory maternity leave policies which affect public school teachers are unconstitutional. 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52.

11. *February 19, 1974.* The Reynoldsburg Board of Education revised its

maternity leave policy in light of the Supreme Court's decision in *LaFleur*. This chronology illustrates the rather divergent judicial opinions which existed concerning the constitutionality of mandatory maternity leave policies before the question was finally decided by the Supreme Court early in 1974.

The plaintiff's arguments concerning this affirmative defense focus not so much upon the forced resignation in 1972 as upon the failure to rehire after receipt of the June 19, 1973 letter from her counsel to Mr. Cherry. Plaintiff insists that once this Court had struck down the mandatory leave policy of the Westerville School Board in *Heath, supra*, the defendants' refusal to reinstate her was unreasonable. A quick review of the chronology set out above demonstrates that the constitutionality of such policies was far from settled after *Heath* was decided. Six months later, the *Cohen* decision of the United States Court of Appeals for the Fourth Circuit upheld such policies against constitutional attack. Moreover, the decision of the defendants not to accede to the demand of plaintiff's counsel was made on advice of counsel.

The Court finds from the evidence adduced at trial that the defendants acted in subjective good faith in maintaining and enforcing the challenged policy against Sharon Demkowicz. The Court further finds that their maintenance and enforcement of such a policy was reasonable in view of the unsettled state of the law at the time, and in view of all the other circumstances bearing upon the situation.[4]

## II. CONCLUSIONS OF LAW

### A. *The Reynoldsburg Maternity Leave Policy*

The holding of the Supreme Court in *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52

---

**4.** It is worthy of note that even as it struck down the maternity leave policies involved in *LaFleur* and *Cohen*, the Supreme Court observed that "the regulations no doubt represent a good-faith attempt to achieve a laudable goal. . . . " 414 U.S. at 648, 94 S.Ct. at 800, 39 L.Ed.2d at 64.

(1974) was essentially that a public school board is without power to promulgate regulations establishing what the Court termed "an irrebuttable presumption of physical incompetency" concerning pregnant or post-partum school teachers. 414 U.S. at 644 and 649, 94 S.Ct. at 798 and 800, 39 L.Ed.2d at 62 and 65. "[T]he question is not whether the school board's goals are legitimate, but rather whether the particular means chosen to achieve those objectives unduly infringe upon the teacher's constitutional liberty." 414 U.S. at 648, 94 S.Ct. at 800, 39 L.Ed.2d at 64. The Cleveland and Chesterfield County policies, which required that the teacher take a leave of absence five months and four months, respectively, before the expected date of delivery, were invalid because even if it were assumed that some teachers would be unable to work past the particular cutoff dates set out in the challenged policies, "it is evident that there are large numbers of teachers who are fully capable of continuing work for longer than the Cleveland or Chesterfield County regulations would allow." 414 U.S. at 646, 94 S.Ct. at 799, 39 L.Ed.2d at 63. Decrying the absence of an "individualized determination by the teacher's doctor—or the school board's—as to any particular teacher's ability to continue at her job," the Court found that such rules "sweep too broadly." 414 U.S. at 644, 94 S.Ct. at 798, 39 L.Ed.2d at 62.

The policies involved in *LaFleur* and *Cohen* differ from that of the Reynoldsburg School Board in that both Cleveland and Chesterfield County provided a leave of absence for the pregnant teacher. A Cleveland teacher who wished to return to the system was "given a priority in reassignment to a position for which she [was] qualified," 414 U.S. at 635, 94 S.Ct. at 794, 39 L.Ed.2d at 57, while a Chesterfield County teacher in like circumstances was "guaranteed reemployment no later than the first day of the school year following the date upon which she is declared re-eligible." 414 U.S. at 637, 94 S.Ct. at 795, 39 L.Ed.2d at 58. In contrast, Sharon Demkowicz, as a teacher with less than three years experi-

ence in the Reynoldsburg system, was required under the board policy to submit her resignation or be terminated, and was afforded no priority upon application for re-employment.

The Court concludes that under the principles enunciated in *LaFleur* the Reynoldsburg policy was constitutionally deficient in two respects. First, the policy required that the teacher cease teaching at a date certain in her pregnancy, namely, ninety days before her expected date of delivery, unless the needs of the school system required otherwise. This is "an irrebuttable presumption of physical incompetency" which is invalid for the same reasons that Cleveland's five month rule and Chesterfield County's four month rule were struck down.

The second and the more glaring infirmity of the Reynoldsburg policy is its insistence that pregnant teachers with less than three years experience in the system be terminated. The underlying concern of the Court in *LaFleur* was that "[b]y acting to penalize the pregnant teacher for deciding to bear a child, overly restrictive maternity leave regulations can constitute a heavy burden" on the exercise of the *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349, 362 (1972) right "to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." 414 U.S. at 640, 94 S.Ct. at 796, 39 L.Ed.2d at 60. A heavier burden than termination of employment does not readily come to mind. The offending policies involved in *LaFleur* were not so draconian. Teachers subject to the policies were either granted priority status when they sought re-employment or simply guaranteed re-employment. 414 U.S. at 635 n.1 and 637 n.5, 94 S.Ct. at 794, 39 L.Ed.2d at 57 and 58. The policies were designed to affect the teacher's employment during the latter part of her pregnancy and shortly thereafter. The Reynoldsburg policy, on the other hand, begins with the statement, "*The employment* of any pregnant female employee *will be terminated* ninety days

before the expected date of delivery. . . . " (Emphasis supplied.) The policy went on to provide that pregnancy was not such a stigma as to move the Reynoldsburg Board of Education to bar the offending employee from the system forever: "Teachers whose employment has been terminated because of pregnancy may apply for re-employment in the school system." Teachers with three or more years experience in the system "may request"[5] a maternity leave.

Neither continuity of instruction nor physical competency of teachers, which were the two state interests asserted in *LaFleur,* lends any support to the Reynoldsburg policy. Termination is at least in connotation and effect a punitive measure, and bears no relationship whatsoever to any recognizable state interest in a maternity context. I therefore conclude that the maternity leave policy of the Reynoldsburg Board of Education was void in its entirety by operation of the Fourteenth Amendment to the United States Constitution.

### B. *The Defendant Individuals*

■ The defendant public school administrators are state officials; their activities undertaken in connection with the plaintiff's employment were actions taken under color of state law. 42 U.S.C. § 1983 subjects such persons to civil liability for the deprivation of the constitutional rights of citizens and other persons within the jurisdiction of the United States. The Supreme Court has grafted upon the categorical language of § 1983 an affirmative defense of acting in good faith (a subjective standard) and in the reasonable belief that the action is constitutional (an objective standard). *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L. Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

Plaintiff argues that such a defense may not be raised in the instant case, but the Court concludes otherwise.

The amended complaint in this action includes a prayer that the Court "enter a judgment in favor of the named plaintiff and the class which she represents against all defendants, jointly and severally, in the amount of $500,000.00;" it does not mention back pay specifically. Legal relief is mentioned in the second paragraph of the prayer. Since the filing of the amended complaint, however, plaintiff has "limit[ed] her request for damages to those available under the Court's equitable powers." May 6, 1975 Motion to Strike Defendants' Jury Demand.

■ It is well-settled that relief in the nature of a back pay award is a remedy sounding in restitution and is therefore equitable rather than legal; court decisions on this point usually arise in the context of questions involving the right to jury trial under the Seventh Amendment. See, *e. g., Equal Employment Opportunity Commission v. Detroit Edison Co.,* 515 F.2d 301, 308 (6th Cir. 1975); *Harkless v. Sweeny Independent School District,* 427 F.2d 319, 323–24 (5th Cir. 1970), *cert. denied* 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971).

■ Plaintiff insists that the "good faith and reasonable belief" defense enunciated in *Wood v. Strickland* and like cases may not serve to bar any form of equitable relief. There would be, of course, no purpose in permitting such a defense to bar prospective injunctive relief, and there appears to be general agreement that the defense is not available in such a case. See *Wood v. Strickland,* 420 U.S. 308, 314 n.6, 95 S.Ct. 992, 996, 43 L.Ed.2d 214, 220 (1975); *Whorley v. Brilhart,* 359 F.Supp. 539, 542 (E.D.Va.1973). Plaintiff argues, then, as follows: "If, one, good faith on the part of

---

**5.** The Cleveland policy, by way of contrast, provided that a leave of absence "shall be granted by the Superintendent," 414 U.S. at 635 n.1, 94 S.Ct. at 794, 39 L.Ed.2d at 57, while the Chesterfield County policy provided that such a leave was contingent upon the teacher's

having "a record of satisfactory performance," 414 U.S. at 637 n.5, 94 S.Ct. at 794, 39 L.Ed.2d at 58.

The Reynoldsburg policy is set out in n.2, supra.

the defendants is not a bar to an action for equitable relief, which it is not; and, two, a request for back pay is a part of the equitable remedy of reinstatement, which it is, it follows that a back pay award cannot be defeated by a showing of good faith." Post-trial Memorandum at 2.

This argument is fallacious because (1) it assumes that all forms of equitable remedies necessarily have the same relationship to the "good faith and reasonable belief" defense as does prospective injunctive relief, and (2) it ignores both the underlying rationale of the defense and general principles of equity which must be considered by the chancellor.

In *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214, 225 (1975), the Court referred to the good faith defense as "a special exemption from the categorical remedial language of § 1983." Citing both "common law tradition" and "strong public policy reasons," the Court observed:

> Liability for damages for every action which is found subsequently to have been violative of a student's constitutional rights and to have caused compensable injury would unfairly impose upon the school decisionmaker the burden of mistakes made in good faith in the course of exercising his discretion within the scope of his official duties. School board members, among other duties, must judge whether there have been violation of school regulations and, if so, the appropriate sanctions for the violations. Denying any measure of immunity in these circumstances 'would contribute not to principled and fearless decision-making but to intimidation.' *Pierson v. Ray, supra,* 386 U.S. at 554, 87 S.Ct. 1213, 18 L.Ed.2d 288.

420 U.S. at 318, 319, 95 S.Ct. at 999, 43 L.Ed.2d at 225. This same consideration of not unfairly imposing personal financial liability for good-faith mistakes exists in any case in which a judgment would run against a state official in his individual capacity. Whether the remedy ordered is legal or equitable is in fact immaterial to the policy considerations which have given rise to the qualified defense of executive immunity. The operative consideration is not the nature of the relief but whether the judgment will in fact reach into the pocket of the state official.

 It is difficult to reconcile the fact that qualified executive immunity has been grafted upon § 1983 in the context of actions at law, with plaintiff's proposition that such a defense is not recognizable in equity. The chancellor's historic concern with the equities among the parties vis-a-vis their naked legal rights and duties would seem to me to require him to give great weight to those principles of fairness which have evolved in similar contexts in actions at law. Despite some authority to the contrary,[6] then, I conclude that the defendant school officials do have available to them in a suit for back pay the defense of good faith and reasonable belief. It follows from this conclusion and from the factual determinations made earlier in this opinion that the defendant school administrators are not liable for any award of back pay to Sharon Demkowicz.

## C. *Reynoldsburg City School District*

 Defendant Reynoldsburg City School District is under Ohio law "a body politic and corporate, and, as such, capable of suing and being sued." R.C. § 3313.17. The district is not a "person" within the meaning of 42 U.S.C. § 1983, *Moor v. County of Alameda,* 411 U.S. 693, 710, 93 S.Ct. 1785, 1796, 36 L.Ed.2d 596, 610 (1973). 28 U.S.C. § 1343(3) therefore does not confer jurisdiction of this Court over the district. Plaintiff brings this action pursuant to the Fourteenth Amendment as well as § 1983, however, and the amount in controversy exceeds ten thousand dollars, exclusive of

---

**6.** See *Paxman v. Wilkerson,* 390 F.Supp. 442, 446–47 (E.D.Va.1975); *Schreiber v. Joint School District No. 1,* 335 F.Supp. 745, 748 (E.D.Wis.1972). *Cf. Eslinger v. Thomas,* 476 F.2d 225, 229–230 and 230 n.4 (4th Cir. 1973) *with Jannetta v. Cole,* 493 F.2d 1334, 1338 (4th Cir. 1974).

interest and costs. The Court therefore does have jurisdiction over the defendant district pursuant to 28 U.S.C. § 1331(a) (1970), see *City of Kenosha v. Bruno,* 412 U.S. 507, 514, 93 S.Ct. 2222, 2227, 37 L.Ed.2d 109, 116 (1973); *Bivens v. Six Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), unless this lawsuit is prohibited by the Eleventh Amendment, as the defendant district asserts.

■■■ In view of the distinction which has been drawn between a state and its political subdivisions in the context of the Eleventh Amendment, the Court must reject the contention that this amendment bars this suit against the district. See *Edelman v. Jordan,* 415 U.S. 651, 667 n.12, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662, 675 (1974) ("[A] county does not occupy the same position as a State for purposes of the Eleventh Amendment.") See also *Incarcerated Men of Allen County Jail v. Fair,* 507 F.2d 281, 287 (6th Cir. 1974).[7]

■■■ The defendant district also argues that plaintiff is barred from recovery by the doctrine of laches, or by some similar equitable principle. It is true that Mrs. Demkowicz resigned without any form of protest which might have informed the defendants that she opposed the mandatory maternity policy. The Court has considered this factor in holding that the defendant school administrators acted in good faith. But I do not find that it would be equitable under the circumstances of this case to hold that plaintiff is barred from recovery because she did not object to a policy which was clear on its face and the operation of which was explained to her by her principal.

*Cf. Bradley v. Cothern,* 384 F.Supp. 1216, 1222 (E.D.Tex.1974). Moreover, plaintiff repeatedly has sought re-employment with the defendant district, so that it may not be said that she has sat by complacently while a potential back pay award accrued.

■■■ The Reynoldsburg City School District also argues that Sharon Demkowicz has failed to mitigate her damages by searching diligently for work since January 27, 1972. The facts set out earlier in this opinion do not support this contention. I hold that the effort to mitigate exerted by Mrs. Demkowicz was reasonable and adequate under the circumstances. I conclude that the defendant school district is liable to Sharon Demkowicz for back pay.

### D. *The Class Action*

■■■ The original complaint in this lawsuit did not include class action allegations. Plaintiff first raised the class issues in her amended complaint, filed on February 25, 1975. Both Rule 23(b)(2) and Rule 23(b)(3) are invoked in the amended complaint, see paragraph IV(b). The Court conditionally certified the class as a Rule 23(b)(2) class by order of May 12, 1975. After a full trial on the merits of the class action allegations, the Court is now of the opinion that its certification of the class in this cause was improvident.

The principle form of relief which has been sought by the plaintiff in this lawsuit has been reinstatement, with back pay, for certain unconstitutionally terminated public school teachers. Prospective injunctive relief barring future application of unlawful maternity policies has not been at the vortex of this litigation; the Reynoldsburg maternity policy which this suit concerns was

---

7. Defendants submitted with their post-trial brief the affidavit of the clerk-treasurer of defendant Reynoldsburg Local School District. The affiant states that the State of Ohio provides approximately 55% of the funds expended by the district. The plaintiff has moved to strike this affidavit, because the defendants "may not ethically or legally attempt to bring *facts* before a Court after the close of evidence without first having the Court re-open the case." (Emphasis in original.) I hold that the filing of the affidavit was improper after the close of evidence as to plaintiff's individual claim, and, alternatively, that the information contained therein is irrelevant to the asserted Eleventh Amendment defense. The affidavit will be stricken, and the motion of plaintiff for an award of $200.00 for attorneys fees occasioned by the motion to strike will be denied.

modified substantially by the board of education on February 20, 1973, some seven months before this lawsuit was filed. The policy was again modified on February 19, 1974, after *LaFleur* was decided by the Supreme Court. Plaintiff has not contended that the present maternity policy of Reynoldsburg is unlawful under *LaFleur*, nor would it appear that she has standing individually or as a representative of a class to attack a policy which was implemented after she left the system. *Cf. Equal Employment Opportunity Commission v. Detroit Edison Co.*, 515 F.2d 301, 311 (6th Cir. 1975).

Under similar circumstances, the United States Court of Appeals for the Seventh Circuit recently held that a class action seeking reinstatement, with or without back pay, of airline stewardesses in a sex discrimination case where the challenged policies were revised by the defendant airline before the lawsuit progressed to judgment was in the nature of a Rule 23(b)(3) class action rather than one under Rule 23(b)(2). See *Air Line Stewards and Stewardesses Assoc. v. American Airlines, Inc.*, 490 F.2d 636, 643 (7th Cir. 1973), *cert. denied* 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974):

> When the airlines ended their discharge policy, the actions became virtually moot as far as the currently employed stewardesses were concerned, and purely prospective relief against the practice became of little moment. The (b)(3) character of the actions, while always present as to the discharged stewardesses, became even more obvious.
>
> \* \* \* \* \* \*
>
> The actions originally brought against the two airlines should have been, and should henceforth be treated as (b)(3) class actions with the attendant right of a class member, for a reasonable interval, to exclude herself or appear through counsel pursuant to Rule 23(c)(2).

Treating the class in the instant case as a (b)(3) class, then, the Court finds that the (b)(3) requirement that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" is not present in this case. The only common thread connecting the individual members of the class is the written maternity policy of the Reynoldsburg Board of Education. The evidence shows that exceptions were in fact made by the defendants under the policy; teachers were at times permitted to work beyond the mandatory leave date established by the policy, and some teachers in effect were granted leaves of absence although they had less than three years experience in the system and were therefore not entitled, per the written policy, to such a leave.

Factual questions peculiar to each class member proliferate in this case. In Sharon Demkowicz's own case, a material issue of fact existed concerning whether she resigned because of the offending policy or because of her own personal desire to terminate her employment due to pregnancy. A similar question exists as to each teacher who resigned without formal protest, a category which, judged from the personnel records in evidence in this case, encompasses the great majority of those teachers who gave pregnancy as the reason for their leaving the system.

In light of the evidence which indicates that the challenged policy was not applied in the same manner in each individual teacher's case, and in view of the substantial questions of fact concerning whether individual class members were in fact adversely affected by the maternity policy, the Court cannot find that the plaintiff has shown by a preponderance of the evidence that the class action device is a method "superior to other available methods for the fair and efficient adjudication" of this controversy. See Rule 23(b)(3). Plaintiff has urged the Court to enter judgment for the class and to leave these questions for determination by a master. But the question of the impact of the challenged policy upon a particular teacher, and the question of the reason or reasons for a particular teacher's resignation, are not questions going to the

damages of a particular teacher, but to whether that teacher has a valid claim in the first instance. "The more a trial will involve individual proof for each plaintiff's allegations, the less appropriate it becomes for class action treatment." *Seligson v. Plum Tree, Inc.,* 61 F.R.D. 343, 345 (E.D.Pa. 1973). I conclude that the previous certification of the plaintiff class in this lawsuit should be dissolved, and the class stricken without prejudice to any member thereof.

### III. ORDER

For the reasons set forth in the opinion filed this day in this cause, it is hereby ordered, adjudged and decreed as follows:

1. Plaintiff's motion to strike the affidavit of Katherine Vergara, Clerk-Treasurer of the Reynoldsburg City School District, is granted, and her motion for attorneys fees in connection with the motion to strike is denied.

2. The May 12, 1975, conditional certification of the plaintiff class is withdrawn; the class is stricken without prejudice to its members.

3. The defendant school administrators are immune from monetary liability in this action.

4. Judgment will be entered, pursuant to Fed.R.Civ.P. 54(b), concerning the first cause of action in the amended complaint upon submission by plaintiff's counsel of a proposed back pay award. The award will include the 1972–1973, 1973–1974 and 1974–1975 school years, and the second semester of the 1971–1972 school year. The award will be diminished by plaintiff's interim earnings and by recognition of a seven-week maternity leave of absence during the second semester of the 1971–1972 school year. The award will be against only defendant Reynoldsburg City School District, which may file a memorandum in opposition to plaintiff's proposed judgment entry within five (5) days of its filing.

5. The defendants, and each of them, acting individually or in concert, as they may choose, will reinstate Sharon Demkowicz as a teacher in Reynoldsburg High School in a position comparable to the one she held on January 27, 1972. This will be done as soon as a position is available; plaintiff's back pay award will continue to accrue against the school district until such time as she is reinstated. Upon reinstatement, Sharon Demkowicz will have such seniority, pension and other employee rights as she would have had if she had been employed in the district since January 27, 1972.